The **AETNA CASUALTY AND SURETY COMPANY, a corporation of the State of Connecticut, B & B Carriers, Inc., a corporation of the Commonwealth of Pennsylvania, and Brown Brothers Contractors, a division of International Utilities of the U. S., Inc., a corporation of the Commonwealth of Pennsylvania, Successor by merger of Brown Brothers Contractors, Inc., Defendants Below, Appellants,**

v.

**SECURITY INSURANCE COMPANY OF HARTFORD, a corporation of the State of Connecticut, Oscar Nileski and Joel McCarty, Plaintiffs Below, Appellees.**

Supreme Court of Delaware.

June 1, 1970.

James T. McKinstry, of Richards, Layton & Finger, Wilmington, for defendants below, appellants.

William Prickett, and Wayne N. Elliott, of Prickett, Ward, Burt & Sanders, Wilmington, for plaintiffs below, appellees.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

CAREY, Justice:

This is an appeal from a judgment of Superior Court in favor of the appellee, Security Insurance Company of Hartford (Security), against the appellant, The Aetna Casualty and Surety Company (Aetna). The action is one for a declaratory judgment to determine which company has the ultimate responsibility for payment of a loss under automobile liability policies issued by them. Aetna's insured is B & B Carriers, Inc. (B & B); Security's policy was issued to Oscar Nileski (Nileski).

The facts are these: B & B is engaged in the business of hauling freight by truck under a permit granted by the Interstate Commerce Commission. Nileski owns several trucks which he leases to B & B, together with drivers; Nileski does not have an I.C.C. permit. One of these trucks, driven by Joel McCarty, was carrying a load of freight for B & B when it was involved in an accident causing injuries to Lawrence Isaacs. Suit was brought against B & B, Nileski, and McCarty. Not long before the scheduled date for trial of that suit, the present action was instituted to obtain a judicial determination as to which insurance company is primarily liable for the defense of the damage suit and payment of any judgment therein. A few days after the lower Court rendered its decision in favor of Security, the damage suit was settled without prejudiced to the rights of the two insurance companies in the present appeal.

The leasing of Nileski's trucks took place under a written agreement with B & B which contains these provisions, *inter alia*:

(1) Nileski furnishes complete services of drivers and helpers together with the trucks and all necessary equipment, and is paid therefor on a flexible ton-mile basis;

(2) The equipment is operated only by Nileski or his employees; Nileski is an independent contractor and neither he nor his employees are agents or employees of B & B;

(3) Nileski must provide coverage for Workmen's Compensation and any other insurance for the benefit of his employees;

(4) Nileski is responsible for withholding of taxes on income, social security and similar taxes upon those employees;

(5) Nileski pays all expenses of operation, including repairs and maintenance, fuel, tolls, wages and expenses of drivers, and license tags;

(6) B & B is not responsible for any fine incurred by Nileski or his employees;

(7) Nileski may hire such drivers or other employees as he deems appropriate (provided that those drivers shall be required to meet and adhere to such standards as B & B may establish), and B & B has no right to direct or control their hiring, their discharge, or the manner in which they perform their duties, nor does B & B have any responsibility for their compensation;

(8) B & B furnishes to Nileski placards or other devices required by the I. C.C., which Nileski shall attach to his equipment, but shall remove the same upon the return of the unit;

(9) Nileski will maintain public liability and property damage insurance for the vehicles, as well as all other insurance except cargo insurance, which is provided by B & B; Nileski, however, is responsible for the load and will reimburse B & B for any loss by reason of shortage or damage thereto;

(10) Nileski shall indemnify and save B & B harmless from all loss caused by Nileski or his employees by reason of personal injury and property damage;

(11) Nileski assumes all risk of loss or damage to the vehicles, and B & B is under no liability therefor.

The agreement is dated August 31, 1965, and the parties have since operated thereunder, at least up to the time of this action. According to depositions in the record, the various terms of the contract have been observed by the parties during this period. Thus, B & B has in fact exercised no control over the drivers except to designate the destination. At times, its people have explained to the driver the shortest or most economical way of reaching the destination, but it has been left to the driver whether he follows those directions. Nileski has paid all of the expenses, including the drivers' salaries, and B & B has never done so. It is conceded that Nileski would probably discharge a driver if B & B so requested, but it is denied that B & B had any power to discharge him.

The trial Judge held that the I.C.C. rules and regulations are of significance in determining the status of the driver insofar as primary insurance coverage is concerned; that under the circumstances here present, McCarty is deemed for insurance purposes to have been the servant of B & B, and this would be so even without considering the I.C.C. rules; Aetna's policy provides primary coverage and it had the

duty to defend the tort action; Security's policy provided excess coverage only. At the time the Judge reached that conclusion, the negligence case was still pending. Its subsequent settlement does not change the basic issue between the two insurance carriers.

Aetna does not deny that B & B is liable to the public for McCarty's negligence, not only because of the I.C.C. rules and regulations, but also under the common law as set forth in Restatement of Torts § 428. Aetna also concedes that persons injured through negligence of the drivers of B & B's trucks could recover from Aetna under its policy, because of the I.C.C. regulation. It contends, however, that B & B's liability to the public exists solely because the driver's negligence is imputed to B & B; that, both by contract and at common law, B & B has the right, to which Aetna is subrogated, to indemnity against McCarty, the real tort-feasor, and Nileski, the true employer; Aetna's policy specifically excluded coverage for McCarty and Nileski, whereas Security's policy expressly covers them; nothing in the I.C.C. regulations deprives Aetna or its insured of its right to indemnification, since determination of that question has no bearing upon the rights of any third party.

Security, on the other hand, contends that the contract between B & B and Nileski is invalid as an attempt to avoid I.C.C. regulations; that B & B was the exclusive employer of McCarty, even in the absence of I.C.C. regulations; that Aetna's policy does in fact cover Nileski and McCarty; and that Aetna's policy is the one which provides primary coverage, while Security's coverage is only excess insurance.

Clearly, considering only the agreement between B & B and Nileski, and their conduct in observing its terms, Nileski was McCarty's employer. Lester C. Newton Trucking Company v. Neal, Del.

Supr., 204 A.2d 393. Nileski had the sole power to hire and discharge, paid the wages, and had the power to control the employee's conduct in performing his job. Appellee contends, however, that this agreement is a nullity because it conflicts with the I.C.C. regulations. 49 C.F.R., Ch. X, § 1057.4. That section provides, *inter alia,* that a contract or lease for the use of non-owned equipment "shall provide for the exclusive possession, control, and use of the equipment, and for the complete assumption of responsibility in respect thereto, by the lessee for the duration of said contract, lease or other arrangement * * *" The regulation was promulgated pursuant to 49 U.S.C.A. § 304(e), which authorizes the Interstate Commerce Commission to prescribe such regulations as may be necessary to insure that a licensed motor carrier will have full direction and control of leased vehicles and will be fully responsible for the operation thereof as if he were the owner. Several Federal Courts have held these regulations to be for the protection of shippers and others affected by the operation of trucks under the license and to assure compensation to members of the public for injury or death or damage to property arising out of negligent operation of motor carriers. Pacific National Insurance Co. v. Transport Insurance Co., 8 Cir., 341 F.2d 514; Kramer v. American Fidelity and Casualty Company of Richmond, Virginia, 165 A.2d 924; War Emergency Co-op Ass'n v. Widenhouse, D.C.Mun.App., 169 F.2d 403; Prickett v. Hawkeye-Security Insurance Company, 10 Cir., 282 F.2d 294; Carolina Cas. Ins. Co. v. Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co., 3 Cir., 327 F.2d 324; National Mutual Ins. Co. v. Liberty Mutual Ins. Co., 90 U.S.App.D.C. 362, 196 F.2d 597; see also Chapin Owen Co. v. Newman, 201 Misc. 1072, 107 N.Y.S.2d 941; Carter v. E. T. & W. N. C. Transp. Co., 35 Tenn.App. 196, 243 S.W.2d 505. In the present case, the injured persons have no interest in the outcome; we are now concerned only with responsibility between in-

surance carriers, as was true in Allstate Insurance Company v. Liberty Mutual Insurance Company, 3 Cir., 368 F.2d 121. We agree that injured persons had the right, had they desired, to look solely to B & B and its insurer because of the I.C.C. regulations and the filing by Aetna of its endorsement certifying to its coverage, but the existence of that right or its exercise does not resolve the issue here. We are not concerned with the rights of those injured persons. Furthermore, there is no provision in the act or the regulations whereby an interstate carrier or its subrogee is forbidden to seek and obtain reimbursement from one otherwise liable therefor by contract or common law. Pacific National Insurance Co. v. Transport Insurance Co., *supra*; Kramer v. American Fidelity and Casualty Company of Richmond, Virginia, *supra*.

■ With these principles in mind, we have examined the Aetna policy and those portions of Security's policy which have been brought to our attention. The definition of the word "insured" in Aetna's policy expressly excludes coverage for the owner, or any agent or employee of the owner, of a hired automobile; in other words, Aetna did not insure Nileski or McCarty. Security's policy admittedly provides protection to Nileski and his employees, but Security contends that its coverage is excess insurance by reason of a clause therein dealing with vehicles leased to others than its named insured. This "excess coverage" provision can come into play only when there is other valid and collectible insurance, and there is no other coverage for Nileski and McCarty. Aetna was, of course, obliged to protect B & B from loss in the negligence case, but the primary obligation for the accident was upon the actual tort-feasor, who was insured only by Security; it accordingly is the "primary" insurer.

The judgment below must be reversed.