622 West 113th Street Corp., Plaintiff, v. Chemical Bank New York Trust Co., Defendant and Third-Party Plaintiff. Department of Welfare of the City of New York, Third-Party Defendant.

Civil Court of the City of New York, Trial Term, New York County, December 27, 1966.

*Garfield, Gelman & Garfield* (*Milton Gelman* of counsel), for plaintiff. *John B. Wynne* and *Robert J. Seymour* for defendant and third-party plaintiff. *Leo A. Larkin, Corporation Counsel* (*Philip Sokol* of counsel), for third-party defendant.

Edward J. Greenfield, J. Plaintiff's complaint alleges that the defendant bank, in which it maintained an account, deducted sums from its account " without authorization or justification." * On the trial plaintiff proved it was a depositor, had deposited a New York City Department of Welfare check indorsed by a person who satisfactorily identified herself as the payee, and was notified six months later that the Department of Welfare claimed the indorsement was a forgery, and that the bank accordingly was debiting the account.

The defendant bank in its answer pleaded a general denial and an affirmative defense of forgery, and interposed a third-party complaint impleading the Department of Welfare. On the trial, the bank proved that six months after it had credited plaintiff for the amount of the check, it was notified by its correspondent bank that the Department of Welfare claimed the

---

* It is not clear whether this was an attempt to plead some form of an account stated, but on the trial plaintiff made no attempt to introduce its monthly bank statements.

indorsement had been forged, forwarded a copy of an affidavit to that effect, and that as a result the bank repaid the drawee bank and the amount of the check was deducted from plaintiff's account.

On this state of the record, defendant bank claimed plaintiff had failed to prove the genuineness of the check, withdrew its affirmative defense of forgery, and urged that under its general denial it was entitled to judgment, plaintiff having failed to sustain its burden of proving the absence of any forgery. Plaintiff, on the other hand, pointing out that the defendant bank had failed to adduce any first-hand probative proof that the claimed forgery had taken place, insisted that defendant had failed to sustain its burden of proving the presence of a forgery, and that *it* was entitled to judgment.

The question is not to be resolved by abstract discussion as to the relative burdens of proving the affirmative or the negative of an asserted state of facts, nor by the artful or fortuitous state of the pleadings. The specific question posed would ordinarily be controlled by the provisions of the Uniform Commercial Code. Section 3–307 requires a specific denial of the genuineness of a signature on an instrument. Withdrawal by the bank of the affirmative defense of a forged indorsement leaves it with only a general denial. The sufficiency of the general denial would appear dubious, but in this case plaintiff is not suing on a specific instrument, but on its over-all depositor-creditor relationship. It is the defendant who contested the validity of a specific instrument, and raised an issue of the effectiveness of an indorsement in its now withdrawn affirmative defense. The issue was raised and put in focus on the trial, however, and section 3–307 (subd. [1], par. [a]) then places the burden of establishing the signature upon the party claiming under it. But paragraph (b) gives such party a presumption of genuineness, placing on the other party the burden of going forward to show a defense. (See Official Comment, McKinney's Cons. Laws of N. Y., Book 62½, pp. 210–211.)

The bank itself never established that the indorsement was a forgery—merely that it had received notice to that effect. Such proof may be sufficient in certain circumstances. Under section 4–201 of the Uniform Commercial Code, prior to final settlement, the collecting bank is merely the agent for collection of the check deposited by the owner and any settlement is provisional. (*Stein* v. *Empire Trust Co.*, 148 App. Div. 850.) The depositor is considered to have warranted that all signatures on the instrument are genuine or authorized (§ 4–207, subd. [2], par. [b]) and " engages that upon dishonor and any necessary

notice of dishonor and protest he will take up the item ''. Thus, if the collecting bank has credited its customer's account for an item, but fails to receive a final settlement for the item, it may charge back the customer's account. (Uniform Commercial Code, § 4–212.) Under these circumstances, upon receiving notification by the drawee bank of a forged indorsement, the collecting bank may properly refund the amount to the drawee bank, and charge back that amount against the depositor's account. (*Geering* v. *Metropolitan Bank,* 170 App. Div. 751; Clarke, Bailey and Young, Bank Deposits and Collections [3d ed., 1963], p. 513.)

The defendant bank here attempted to invoke the charge-back procedure upon notification of the forged indorsement by the drawee bank, but there is one all-important difference here — this came six months after the initial deposit of the check by plaintiff, and long after final settlement of the item. A final settlement can be effected in several ways, as outlined in section 4–213 of the Uniform Commercial Code. Once a final settlement has taken place, the collecting bank is no longer an agent, but has been credited with ownership of the proceeds of the item, and a debtor-creditor relationship with its customer ensues. (*First Nat. Bank of Blanchester* v. *Stengel,* 169 N. Y. S. 217, and cases cited therein.) The bank cannot then unilaterally deduct sums from the amount credited to a depositor. After final settlement, and the charging of the amount of the check against the drawer's account, a voluntary refund by the collecting bank is at its own peril, for there are defenses it could interpose to resist payment. (Clarke, Bailey and Young, *op. cit.,* p. 513 n. 182.) The mere assertion of a claim to any part of a deposit does not permit a bank on its own to recognize the validity of that claim. (Cf. Banking Law, § 134, subd. 5.)

The final settlement of a deposited item then, while terminating the collecting bank's right of charge-back in reliance upon a simple notification from the drawee bank, does not in any way preclude the bank from pursuing its remedies by way of plenary suit, in order to hold the depositor on its indorsement and the warranties connected therewith. (Uniform Commercial Code, § 4–207 ; *First Nat. Bank of Blanchester* v. *Stengel, supra.*) In such an action, the depositor could rely upon the presumption of genuineness, and it would be incumbent upon the bank to produce firsthand probative proof as to any claimed forgery.

The defendant bank did not do so in this case, and ordinarily the plaintiff would be entitled to judgment. However, after the defendant had rested its case, the Department of Welfare, the

third-party defendant went forward with its proof. Its case worker testified the check in question was issued on August 18, 1964 to the client, Mrs. Shirley Gates, and that the next day he was informed by Mrs. Gates that the check had been lost. After three days a replacement check was issued. An expert on questioned documents testified that the person who indorsed the check in question was not the same person who signed all the Department of Welfare papers as Shirley Gates. The court is convinced beyond any doubt that the indorsement was in fact a forgery by a person masquerading as Shirley Gates.

The forgery having been conclusively proved by the third-party defendant, can the plaintiff still recover against the defendant bank, which itself had not adduced adequate proof to defeat plaintiff's claim? It appears to the court that CPLR 1008 and 4401 are dispositive of this question.

CPLR 1008 clearly establishes the right of the third-party defendant to assert " any defenses which the third-party plaintiff has to the plaintiff's claim ". Stated differently, the " third-party defendant can successfully defend if he can show the plaintiff has no right to recover ". (2 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 1008.02.) The third-party defendant is considered to have the rights of a party adverse to all other parties, even though the original plaintiff may have asserted no claim against him. (See 37 Cornell L. Q. 721, 735.)

CPLR 4401 permits any party to move for judgment with respect to a cause of action. When defendant did so, the court reserved decision. While, with the expiration of subdivision 3 of section 457-a of the Civil Practice Act and the enactment of CPLR 4401 to 4404, any explicit statutory authority upholding the right of a Trial Judge to reserve decision terminated; nevertheless, prevailing case law and logic support the continuation of that right. " In many instances the court may be reluctant to grant a motion during trial for one or more of a variety of reasons: it may wish to consider the law or the facts further; it may be uncertain about granting the motion  *  *  *  *or it may believe that some defect in the proponent's case may be supplied by the opponent's case or by cross-examination of the opponent's witnesses.*" (Emphasis supplied.) (4 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 4401.12. See, also, *Kagan* v. *Avallone,* 243 App. Div. 437, 441.)

The theory underlying this point of view is that " There is no proprietary right to evidence ". (4 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 4401.16.) If a third-party defendant on its case produces evidence sufficient to defeat the plaintiff's com-

plaint, the court must make its judgment on the basis of *all* the evidence before it, and dismiss the complaint, even though it redounds to the benefit of a less than astute defendant.

The third-party defendant here having rebutted the presumption of the genuineness of the signature and having demonstrated that the warranty of plaintiff as to that genuineness was breached, the complaint herein must be dismissed.

In the interests of justice, however, such a dismissal as to the instant cause of action is without prejudice to the institution by plaintiff of any new action he may be advised to take against any party sounding in negligence. This issue was not placed in focus in the present trial, and it would be inappropriate for this court to grant relief based upon such a theory without giving the parties the right to face up to such an issue, interpose appropriate defenses, and examine witnesses with respect to it. This is so even though all the parties are before the court. But, compare *Sterling Nat. Bank & Trust Co.* v. *Merchants Bank of N. Y.* (48 Misc 2d 72) where under the circumstances of the case, Judge PICARIELLO of this court permitted a plaintiff to recover judgment directly against the third-party defendant though it had pleaded a cause of action only against third-party plaintiff. (See, also, *Jacobs* v. *Driscoll,* 78 N. Y. S. 2d 813; *Gorlin* v. *Master Contr. Corp.,* 15 Misc 2d 1.)

The third-party defendant, by failing to stop payment on the check and by allowing six months to elapse before notifying its bank of the forged indorsement, may not have acted with the utmost diligence, and in so doing may have permitted the forger to escape; but plaintiff has here asserted no claim against the Department of Welfare, as it could have under CPLR 1009, nor does it appear to have filed an appropriate notice of claim under section 50-e of the General Municipal Law. Whether, in another action premised on a theory of negligence, it could succeed against the maker of the check, or against any of the banks in the chain of collection for not having resisted the claim for refund and for themselves having failed to assert the defense of negligence, this court does not presume to determine.